**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

In re:

JAMES E. BAUMANN,

        Debtor.

Bankr. Case No. 6:14-bk-3297-ABB

---

JAMES E. BAUMANN,

        Appellant,

v.

Case No. 6:15-cv-27-Orl-37

PNC BANK, N.A.; and
BANK OF AMERICA, N.A.,

        Appellees.

---

**ORDER**

This cause is before the Court on the following:

1. Brief for Appellant, James E. Baumann (Doc. 7), filed January 23, 2015;

2. Reply [sic] Brief for Appellee PNC Bank, N.A. (Doc. 9), filed February 2, 2015;

3. Reply Brief for Appellant, James. E. Baumann (Doc. 10), filed February 17, 2015;

4. Appellee, Bank of America, N.A.'s Answer Brief (Doc. 16), filed March 4, 2014; and

5. Reply Brief for Appellant, James E. Baumann (Doc. 17), filed March 17, 2015.

Debtor/Appellant James E. Baumann, proceeding pro se, takes this appeal from the

Bankruptcy Court's orders: (1) reconsidering dismissal of, and reinstating, his Chapter 13 case (Doc. 1-2); (2) granting Appellee PNC Bank, N.A. ("PNC") relief from the automatic stay (Doc. 1-3); and (3) granting Appellee Bank of America, N.A. ("BANA") relief from the automatic stay (Doc. 1-4). (Doc. 7.) Upon consideration, and after a full briefing (*see* Docs. 7, 9–10, 16–17), the Court finds that the orders of the Bankruptcy Court are due to be affirmed for the reasons set forth below.

## BACKGROUND

The record on appeal is sparse (*see* Docs. 1, 6, 8, 15), but it reflects the following:

On March 24, 2014, Appellant filed a voluntary petition for reorganization under Chapter 13 of the U.S. Bankruptcy Code, 11 U.S.C. § 1301. (*See* Doc. 1-1, pp. 1–2.) At the time of the filing, Appellees PNC and BANA were attempting, in state court, to foreclose their interests in two of Appellant's real properties—a Deltona home and West Palm Beach condominium. (*See* Doc. 8-1, pp. 12:18–13:3, 15:12–16:7.) The filing of Appellant's voluntary petition caused the state-court proceedings to be automatically stayed pursuant to 11 U.S.C. § 362(a)(1). (*See* Doc. 8-1, p. 16:3–6.)

In response, Appellees appeared in the bankruptcy case and filed proofs of their relevant claims. (*See* Docs. 6, 15-1 (incorporating the relevant proofs of claims into the record on appeal).) Appellant objected to the proofs. (*See* Doc. 8-1, p. 13:10–29.)

On September 10, 2014, the Bankruptcy Court held a confirmation hearing on Appellant's proposed Chapter 13 plan—which did not address Appellees' mortgage claims at all. (*See* Doc. 1-1, p. 7; Doc. 8-1, pp. 4:15–25, 5:23–6:8.) At the hearing, Appellant explained that he did not provide for payment to Appellees because he intended to avoid both of their claims. (*See* Doc. 1-1, p. 12; Doc. 8-1, pp. 4:15–25, 5:23–6:19.) In

fact, the only creditor that Appellant recognized was Space Coast Credit Union, which had a claim to his automobile. (*See* Doc. 8-1, pp. 6:5–8, 16:25–18:4.) At the close of the confirmation hearing, the Bankruptcy Court concluded that Appellant's proposed plan failed to provide for payment to all secured creditors and was therefore not feasible. (*See id.* at 4:24–25, 6:1–4.) Accordingly, the Bankruptcy Court dismissed Appellant's case. (*See id.*)

Appellant moved for reconsideration of the dismissal order, and the Bankruptcy Court set the motion for an October 22, 2014 hearing. (*See id.* at 1, 4:9–10.) At the hearing, Appellant argued that the Bankruptcy Court should not have considered Appellees' claims during the confirmation hearing because Appellant had objected to them and because Appellees "lack Article III standing." (*See id.* at 12:18–14:20.) Without expressly addressing Appellant's standing argument, the Bankruptcy Court concluded that Appellant's objections to the validity of Appellees' claims were "state court matter[s]" better addressed in the foreclosure proceedings. (*See id.* at 17:25–18:3.) However, at the suggestion of the Trustee (*id.* at 16:25–17:4), the Bankruptcy Court agreed to reinstate Appellant's case strictly in order to resolve the car-creditor's claim (*id.* at 18:5–7). To effectuate that result, the Bankruptcy Court reopened the case but lifted the automatic stay as to Appellees so that they could "go back to state court." (*Id.*)

In a series of three written orders submitted by the Trustee and by Appellees, the Bankruptcy Court memorialized its verbal orders from the reconsideration hearing, but it did not expand on the underlying rationale. (Docs. 1-2, 1-3, 1-4.) As Appellant notes, the latter two orders imply that Appellees orally moved for stay relief at the hearing, but, in reality, it was the Trustee that suggested relief. (*See* Docs. 1-3, 1-4 (referring to *ore tenus*

3

motions made "on behalf of" Appellees).) Appellant appeals all three orders. (Doc. 7.)

## STANDARDS

The Court has jurisdiction over this appeal from orders of the Bankruptcy Court pursuant to 28 U.S.C. § 158. The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions de novo. *In re. Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009). The Court reviews the Bankruptcy Court's decision to lift the automatic stay for abuse of discretion.[1] *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989).

## DISCUSSION

Liberally construing his pro se briefing,[2] Appellant contends that the Bankruptcy Court erred in four respects: (1) by implicitly concluding that Appellees had standing to appear in his Chapter 13 case; (2) by granting stay relief at the suggestion of the Trustee rather than PNC and BANA themselves; (3) by granting stay relief based on the limited record before it; and (4) by granting stay relief without appropriate notice and a hearing, thereby depriving him of procedural due process. (*See* Doc. 7, pp. 8–13.) The Court will address each issue in turn.

---

[1] Appellant misconstrues the Bankruptcy Court's orders lifting the automatic stay (Docs. 1-3, 1-4) as orders granting summary judgment (*see* Doc. 7, p. 4). For that reason, he confuses the appropriate standard of review. (*See id.* (citing Fed. R. Civ. P. 56).)

[2] The contours of Appellant's arguments shift from briefing to briefing. (*Compare* Doc. 7 *with* Docs. 10, 17.) While the Court liberally construes Appellant's arguments, *see In re Milian*, 589 F. App'x 522, 523 (11th Cir. 2015), it declines to address those raised for the first time in his reply briefs, *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."). Moreover, the Court notes that it has carefully considered all arguments raised in Appellant's initial brief (Doc. 7), and any not expressly addressed in this Order are rejected.

**I.     Standing**

Appellant first contends that Appellees lack standing to appear in his Chapter 13 case and therefore the Bankruptcy Court's contrary conclusion was error.[3] (*See* Doc. 7, pp. 9–11.) Appellant is mistaken.[4]

The crux of Appellant's contention is that Appellees have to "prove" that they are his creditors in order to have standing. (Doc. 7, pp. 8–9.) Not so. Bankruptcy cases implicate two types of standing—"Article III" and statutory"—and both are measured by allegations, not proven facts. *See In re Smith*, 522 F. App'x 760, 764–66 (11th Cir. 2012).

Article III standing arises out of the Constitution's case-or-controversy requirement and demands that parties invoking federal jurisdiction demonstrate "a personal stake in the outcome of a case." *Id.* at 764 (citing *E.F. Hutton & Co., Inc. v. Hadley,* 901 F.2d 979, 984 (11th Cir.1990)). Because Article III standing is determined at the outset of a case, it is decided based on "allegations" in the invoking party's filings. *See id.* (citing *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Florida*, 641 F.3d 1259, 1265 (11th Cir. 2011)).

Statutory standing stems from the Bankruptcy Code, which permits only a "party in interest" to seek relief from the automatic stay or to object to a Chapter 13 plan. *See* 11 U.S.C. §§ 362(d), 1324(a). A "creditor" is a party in interest for purposes of the Bankruptcy Code. *Cf. Greer v. O'Dell*, 305 F.3d 1297, 1302 (11th Cir. 2002) (implying as much through citation, and reasoning that the "Bankruptcy Code and Rule 17 of the Federal Rules of Procedure each have liberal standing provisions, designed to allow a

---

[3] Appellant implies that the Bankruptcy Court necessarily concluded that Appellees have standing when it disregarded his contrary argument at the reconsideration hearing. (*See* Doc. 7, pp. 8–9.) For argument's sake, the Court agrees.

[4] Standing is a jurisdictional issue subject to *de novo* review. *See Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217, 1220 (11th Cir. 2010).

5

party to appear as long as it has a direct stake in the litigation under the particular circumstances"). Under the Code, a "creditor" is an entity with a preexisting "claim against the debtor," 11 U.S.C. § 101(10)(A), and a "claim" is any "right to payment, *whether . . . disputed* [or] *undisputed*," *id.* § 101(5)(A) (emphasis added).

Here, Appellees demonstrated both Article III and statutory standing by appearing in Appellant's bankruptcy case and filing proofs of their claims on Appellant's real properties. (*See* Docs. 6, 15-1) Disputed or not, those proofs evinced alleged "claims" that made Appellees "parties in interest" with a tangible stake in Appellant's Chapter 13 case. *See In re Smith*, 522 F. App'x at 765 (holding that a purportedly secured creditor's alleged "tangible financial interest in getting the [debtors' real property] out from under the jurisdiction of the bankruptcy court so that it could foreclose on the property . . . was sufficient to confer Article III standing").[5] That is all that is required to show standing.

## II.   The Trustee's Suggestion

Appellant next argues that the Bankruptcy Court erred by granting Appellees "relief from the automatic stay through orders submitted by an attorney who had not filed a Notice of Appearance, based on a suggestion made by the Trustee." (Doc. 7, p. 6; *see also id.* at 8 (protesting that "there were no Ore Tenus motions made at the hearing for Reconsideration"). The underlying rationale for this argument appears to be that 11 U.S.C. §§ 362(d) and (g)—taken together and read in isolation from the rest of the

---

[5] Also in *Smith*, 522 F. App'x at 765, the U.S. Court of Appeals for the Eleventh Circuit approvingly cited *In re James Wilson Assocs.*, 965 F.2d 160, 168 (7th Cir. 1992), in which the Seventh Circuit held that a "secured creditor dragged into a bankruptcy proceeding against his will by the automatic stay provision of the Bankruptcy Code" demonstrated "standing in an Article III sense" by alleging a "tangible financial interest in getting his security out from under the jurisdiction of the bankruptcy court so that he can foreclose it."

6

Bankruptcy Code—require a motion from an "interested party" before the Bankruptcy Court can grant stay relief. (*See* Doc. 7 (citing provisions of 11 U.S.C. § 362).)

The Court is not persuaded. As explained in 11 U.S.C. § 105(a), "[n]o provision of [the Bankruptcy Code] providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." The Bankruptcy Court here acted largely or entirely of its own accord when it lifted the stay, and the Bankruptcy Code entitled it to do so. *See id.*; *see also In re McDaniels*, 213 B.R. 197, 201 (Bankr. M.D. Ga. 1997) ("[T]he Court concludes that it may sua sponte relieve the automatic stay as to all creditors in the case while, at the same time, continuing the pendency of this case in order to permit the state law foreclosure rights of [the creditors] to be exhausted.").

### III.    The Record

Third, Appellant argues that the record before the Bankruptcy Court did not support stay relief. (*See* Doc. 7, p. 12.) Again, the Court disagrees.

Pursuant to 11 U.S.C. § 362(d)(1), bankruptcy courts may lift the automatic stay "for cause." Filing a bankruptcy petition in "bad faith" qualifies as "cause" justifying stay relief. *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988). "Bad faith" is a somewhat nebulous term in the bankruptcy context, but it at least covers situations where a debtor intends to "abuse the judicial process and the purposes of the reorganization provisions" or to "delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *See id.*

Although the Bankruptcy Court did not expressly cite § 362(d)(1) in its orders lifting

the stay (Docs. 1-2, 1-3, 1-4), the transcript of the reconsideration hearing reveals the court's clear concern that Appellant's petition reflected bad faith filing (*See, e.g.*, Doc. 8-1, pp. 11:25–12:11, 15:7–16:7.) With Appellees' proofs of claims before it (*see* Doc. 1-2 (citing Appellees' proofs)), as well as Appellant's concession that he filed his Chapter 13 petition at least partially for "protection" from the pending state-court foreclosure proceedings (Doc. 8-1, pp. 12:18–13:3, 15:22–25), the Bankruptcy Court evidently concluded that the stay should be lifted as to Appellees in order to prevent abuse of the reorganization process. (*See id.* at 17:25–18:3 (concluding that the dispute over Appellees' mortgage interests was "a state court matter," and granting relief "to the two mortgage holders to go back to state court").) That conclusion is reversible only for an abuse of discretion, *In re Dixie Broad., Inc.*, 871 F.2d at 1026, and the Court cannot say that the Bankruptcy Court abused its discretion here. *See In re Phoenix Piccadilly*, 849 F.2d at 1395 (finding that a debtor's concession that it filed its petition "to fight . . . a foreclosure action" evinced bad faith filing).

**IV.   Procedural Due Process**

Finally, Appellant submits that, by granting stay relief at a dismissal-reconsideration hearing, the Bankruptcy Court "blindsided" him and deprived him of procedural due process. (Doc. 7, pp. 8, 12.) Appellant does not cite any authority for this proposition (*see id.*), and indeed, the law runs contrary to it. While 11 U.S.C. § 362(d) suggests that "notice and a hearing" are required before the Bankruptcy Court can lift the automatic stay, 11 U.S.C. § 102(1) clarifies that "notice and a hearing," as that phrase is used in the Code, means only "such notice" and "such opportunity for a hearing *as is appropriate in the particular circumstances.*" (emphasis added). Significantly, in a hearing

involving a motion to dismiss, "the possibility of relief in the nature of lifting the automatic stay is implicit." *In re McDaniels*, 213 B.R. at 201.

At the dismissal-reconsideration hearing here, with the possibility of stay-relief implicit, the Bankruptcy Court permitted Appellant the uninterrupted opportunity to say "everything" that he wanted heard. (Doc. 8-1, pp. 12:12–14:21.) That is all the process Appellant was due under the circumstances.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. The Bankruptcy Court's orders (Docs. 1-2, 1-3, 1-4) are **AFFIRMED**.

2. This appeal is **DISMISSED**.

3. The Clerk is **DIRECTED** to close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 21, 2015.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record